In re. Ramsell, Monty Ramsell, Appellant in Pro Se, Ross Mummy, Counsel for Appley, Trustee Edward John Maney, Leonard J. McDonald, Counsel for Appley, Wells Fargo, N.A. Okay, I'm going to have a couple of housekeeping questions. First of all, Ms. Ramsell, do you want to reserve some time for rebuttal? Okay, five minutes is fine with us and same rules, okay? I'll let you, I'll give you a heads up when you're getting close, but you have to decide ultimately when you want to stop with one argument and make your rebuttal. I think we've got two appellees here, so I'm going to tell them that you're going to have to split your 15 minutes or have one side simply take the argument. You don't have to tell me now, but when we begin the argument, I expect you to articulate whatever your mouth is going to be there, okay? Understood? Okay, can I begin with a question for Ms. Ramsell? And we'll go ahead and start the timing now. Ms. Ramsell, I'm just kind of curious. I know the house was sold, the Bronco property. Are you still living there, ma'am? Yes. Okay, thank you very much. I wanted to know that. Thank you. Go ahead and you have the floor, virtually. Go ahead and tell us your thinking here. Trustee filed his motion to dismiss the bankruptcy because of bad faith, saying that the key issue is that I have no intention to repay the mortgage debt, and that's not true. The only entity that have alleged to have any mortgage debt is Wells Fargo, and they are the only one to file a proof of claim. You know, can I make a comment? You're a little bit faint, and I think you're a little bit soft-spoken. Can you talk more directly in the microphone so we get every word? Sure. Thank you. Yeah, it's better. Thank you very much. Okay, thank you. You're welcome. The only entity that have filed any proof of claim is Wells Fargo, and Wells Fargo, the trustee said that, well, I don't necessarily have to miss Wells Fargo in my schedule and plan, but rather that I have proposed to pay no one. And I'm arguing that the trustee's argument is wrong, because no one is not a legitimate claim. There has to be a named party, and that named party have to be a party holding the note and holding the deed of trust in order for it to be entitled to enforce the mortgage. So Wells Fargo is the only named party filing the proof of claim, and Wells Fargo is not a party holding the note and deed of trust. And Wells Fargo is not a party in interest, and Wells Fargo is not entitled to enforce. And so, trustees fully aware of the fact that Wells Fargo is the only entity that have filed this proof of claim and alleged to have a mortgage debt. And the one and only proof of proof of claim filed in this case for mortgage debt is really Wells Fargo. And Wells Fargo sold the trust business on November 1st, 2021, which is two years before the bankruptcy was filed. And when Wells Fargo already sold the corporate trust services business, they are no longer party in interest. They cannot add a trustee, they cannot function as a trustee, and we know for a fact from the public records of governmental website, Wells Fargo is not entitled to enforce or entitled to repay other they sold the trust business. And so, Wells Fargo's proof of claim is fraudulent, and Wells Fargo and its alleged attorney have committed perjury because they misrepresented to the bankruptcy court and also to this court. And in order to avert the attention to Wells Fargo's fraudulent conduct, trustees trying to put the blame on me for filing in bad faith. And trustees trying to divert the court's attention to the main of the main issue, which is misrepresentation, perjury, and filing fraudulent proof of claim. Mr. Amsel, can I ask you a question? This is Judge Corbett. In your second bankruptcy, you did not identify any mortgage obligation in your schedules. And instead, you only identified your husband as a secured creditor. Okay. There's a question of who holds the secure debt, but it sounds like you're agreeing that there might be a secure debt out there. It's just, but there's a secure debt out there, but nothing in your plan or in your schedules would indicate that you were planning to pay that in your bankruptcy case. Wouldn't that be enough to dismiss your case? Well, I can explain that. If you look at the proof of claim that's filed by Wells Fargo, in the schedule that is attached to the proof of claim, you can see that there's a full amount of the mortgage amount credited into the account. That means that the servicer has received the funds. And so the debt should be discharged, but the servicer refused to apply it to the correct account. They put it into unapplied funds sitting into their accounts. Well, can I interrupt you for a second here so we kind of stay on track? And again, you can use your time any way you want. But what we have to decide here is whether the bankruptcy court made a mistake in dismissing the case. And if I can follow up on Judge Corbett's question, what Judge Corbett is remarking on is the fact that the bankruptcy court believed that a combination of a number of cases filed by you and your husband, and apparent willingness to pay nobody on this secure debt. Because frankly, the plans did not take any account of it. Neither did the schedules. And that as far as Wells Fargo is concerned, they, or you may say somebody else, it was about a million one here and about 600,000 of that is past due. And the position of the trustee was that was demonstrably not dealt with in your plan three times. And that kind of repetition of an unwillingness to use the bankruptcy code to actually pay some debts is grounds for dismissal for bad faith. Plus the fact that there is no reality that I'm aware of in which you could pay that. No offense. You know, you simply don't have the income to do it. So part of the, you know, the bad faith analysis doesn't mean that you're a bad person or it just means that you're using the bankruptcy code in a way that it really, you know, you can't get to a cognizable bankruptcy outcome. And that's what the bankruptcy court seems to have said in response to the trustee's motion to dismiss, not Wells Fargo's. So there's a lot of that. That's what you need to tell us why that was a mistake. I mean, it's not so much what Wells Fargo did. It's what you did. That's the point. So if you could address that, I'd be grateful. Sure. Well, there is actually no question that the funds of the tender for payment was received by the servicer. Well, I will interrupt you again to say Judge Collins seemed to believe that that was not true and that that assertion was, should we say, not well taken. So why was that a mistake? Well, are you saying that the servicer lied in the statement because they sent a monthly statement of the account and the statement clearly showed that there's credit to the account? Well, are you, can I ask you, are you saying that you paid somebody $1.1 million and therefore there's no longer any debt? Yes, we have tender of $1.1 million. Okay. Judge Collins didn't seem to think that was true. So if you want to suggest, I'm sorry, go ahead. I was going to say, what do you mean by tender? You're using that word carefully. What does tender mean in your mind? Tender is basically, we tend to secure a negotiable instrument payable to Mr. Cooper, who is the servicer. A negotiable instrument. Was that a check? What kind of negotiable instrument? No, it's not a check. What was it? It's a negotiable instrument. You can call that a draft. A draft drawn on whom? Well, because that particular draft wasn't in any of the record and there wasn't anything that we can even talk about because it's not in the record. In this case, it's not in the record anywhere. It would have been useful for the bankruptcy judge to see that you paid it off. You say you've tendered money and you tendered a negotiable instrument. Was that negotiable instrument negotiated? Yes, that's what I'm talking about. But you say you actually paid, not just gave paper, but the paper was in fact negotiated and paid. Why didn't you give that information to the bankruptcy court? That information is in the statement provided by the servicer. Is that credit tied to your negotiable instrument or is that credit tied to some other bank purchasing the loan? No, it's tied to the negotiable instrument. Okay, so funds came out of your accounts and the negotiable instrument was negotiated. So funds came from you. Actual funds, not just paper. Well, they credit the account. That's the proof because that's the only thing that we can rely on right now. The only thing is the statement that is on the record. And it shows that it's credited to the account. And then you can look at the statement that provided in the proof of claim. Actually, you can see the credit going in on January 26 and on January 31st. You can see entries posted as payoff to principal, payoff to interest, amount credited to escrow, et cetera, et cetera, et cetera. So yes, they negotiated the instrument. There's no question about that. Okay, you're closing in on your five minutes. If this is a natural place to pause, that's fine. And we can hear from the appellees and you can pick up for rebuttal. Is that okay? Okay, thank you. Okay, so how do the appellees want to divvy this up? Um, yes, your honor, we would, I would like to go first and then, um, go ahead and go ahead and make your appearance. Uh, yes, this is Ross mummy for trustee Edward Maney. Okay. And I'd like to go first and I'd like to reserve at least five minutes for Mr. McDonald. Okay, go ahead. All right. Thank you. Uh, thank you, your honors. And may it please the court, um, before we reach the merits of this case, it's necessary first to argue, uh, the quick question right away. Why is the, is the dismissal moot? I mean, she may have lost the house as a legal matter. She's still living there. And if the case were not, if the case were wrongfully dismissed, couldn't she pursue come some kind of bankruptcy case and get some kind of relief? Um, certainly, uh, there, I mean, what mootness is, does the court have the ability to, to rectify a problem and, and give the, the moving party some relief? I mean, how can you tell me that she couldn't get any relief or if we agree with her that the case shouldn't have been dismissed? Well, your honor, it's, it's trustees positions, the appellee trustees position that, um, that the three bankruptcy cases that were filed had no other purpose than to stall and delay the foreclosure of the real property. And that has happened. Um, furthermore, the debtors are, um, it's not to say that there could be no relief from a bankruptcy relief that thereafter is, is, um, is simply not possible anymore. Well, that's, that's if they want to keep the house. That may be true, but they're entitled to other relief, aren't they? Okay. So, so again, tell me how this is moot as a matter of dismissal. Well, your honor, I'm, I'm basing, we're basing that argument, uh, on, on the debtor's purpose, uh, behind filing the case, a purpose that judge Collins, um, noted, uh, on the record at the, at the hearing on the motion to dismiss that this was, this case was filed as a, well, that, that, that's a reason to dismiss the case. It doesn't mean that if we somehow didn't agree with him, the fact that she's, that she's legally lost the house doesn't mean she couldn't potentially get a discharge, correct? That's correct. If she could get a discharge, how in God's name is this moot? Yeah. So, so you could move on though, on the mootness piece is that you have other arguments, I assume. Yeah. Let's hear the other arguments. And, and I, I'm really interested in, in hearing about, you know, the trustee asked for a one year bar. Uh, the bar that was actually entered was an NREM bar. Um, did parties know, um, that that would be a possibility? Um, yes. Thank you, your honor. I'm happy to answer that question. Um, so the, the request that the trustee made was, um, was a bar to refiling for one year for Ms. Ramsell, as well as her husband and anyone with a, with an ownership interest in the property at 50 Bronco Drive. Um, the bankruptcy judge, instead of granting that requested relief, granted, um, granted a lesser, um, a lesser consequence on, on the debtor and, and the related interested parties, owners of the property at 50 Bronco Drive, and instead, um, issued an order for NREM, uh, stay relief. Um, I would like to note that the motion to dismiss the case requested a, a stronger, uh, requested a more, um, a harsher remedy than what was granted by the court. And Mr. Ramsell was a notice party on the motion to dismiss. So the parties received notice in the trustee's motion to dismiss of that relief being sought. When you say he was a noticed party, how was, how was Mr. Ramsell given notice? He was, he was mailed a copy of the motion to dismiss. He was mailed his own separate copy to the same address as Mrs. Ramsell, but he was listed on the certificate of service and received his own copy. And it was made clear in that motion that he was served, that the remedy was being sought that would bar him from filing bankruptcy for one year. So, uh, for, for the appellant to argue that they were, that she was blindsided by this, this stay relief that was ultimately granted, um, uh, I disagree with that. I think that the remedy was being sought was much more severe than what was actually, uh, dealt by the bankruptcy court. And I think the parties had bare notice that, um, some kind of, uh, bar to, um, to further delay a foreclosure was coming. Well, it's a little thing I can. No, you know, just rush. You go ahead. I was going to say one thing that concerns me about the judge's ruling is he, he said, and I think you would probably disagree with him that there wasn't adequate notice to Mr. Ramsell. So he wasn't going to give an order targeted at Mr. Ramsell, but then he entered it in rem order, which is presumably targeted at Mr. Ramsell and everybody else. So if there was, there's little inconsistency there, if there wasn't enough notice for a targeted order, how could there have been enough notice for a, a much broader order? Um, certainly I can see the, I can see the, the court's concern there. Um, uh, I would just have to rely on, as I think the bankruptcy judge relied on section 105 fraud authority to, to fashion a remedy that, that, that seats, you know, that suits. Well, that, I mean, that goes to the court's equitable power to do something. It doesn't address the question of whether people knew what the court was possibly going to do. It's, those are just two different questions. I mean, 105 is a remedies issue, right? It's not a notice issue. Now you may, what I think I'm hearing you say is that with this, you know, greater includes the lesser is a notion that if there was an error in the relief from stay, it's kind of harmless because, hey, he was dismissing the case anyway. And what I hear in the second piece, I think is, well, if we had grounds to get a dismissal in any event, the same grounds maybe would have supported 362 D4, but you didn't tell anybody until the hearing that that's where you were going. So, I mean, I think we, I'm just going to echo Judge Ferris's concerns here that it, it just doesn't, we're not seeing where that's fair play to the debtor and, and Mr. Ramsell. So help us out with that part. Well, again, the, the, the trustee gave all parties, Mr. Ramsell and Mrs. Ramsell, a fair notice of, of the relief ultimately that was granted. I understand that. Well, let me ask you a question. You say all parties and I would just make sure here, look, you've looked at the schedules and you've probably looked at your title reports and you're and you said, and everyone else that has an interest in the property got notice of it. So the everyone else, is there anyone else other than Ms. Ramsell or Mr. Ramsell and, and the secured creditor? I apologize, Your Honor. Probably, I probably misspoke there. When I, what I meant to say was the, the parties that we're aware of have an interest in the property, which would be the appellant, Mrs. Ramsell and her spouse, Mr. Ramsell. Those are the only parties that I'm aware of that have claimed an ownership interest in the property. And so those, those were the parties that were noticed of the motion to dismiss. And I think that the, that the, that the relief sought in the motion was clear and that the ultimate relief granted was essentially have the same impact as what would have been, as them, as, as that relief that was requested would have had. Well, can I, can I raise a related issue? If I remember the transcript, I believe it was the bankruptcy court that said, gee, you know, you could kind of get there if, if, if this were in rem relief under relief from stay. I mean, it was the bankruptcy court who did that sua sponte, right? So there was no notice to anybody before the hearing. It was the bankruptcy court's idea that that might be a way to achieve your goal and it might be permissible. So can you want to respond to the notion that maybe doing that sua sponte was, was a mistake as opposed to having a party actually ask for it, even at the hearing, which doesn't seem to have happened? Um, well, I, I don't believe that that was, um, that that was necessarily a mistake. Your honor. Um, I, I do agree that that was, um, sua sponte. Okay. Judge Collins. Okay. How come it wasn't a mistake? Well, again, because I just, I was, I, um, I apologize for being repetitive, but I think that fair notice was given in the Well, there can't be any fair notice that the judge is going to come up with a different theory, can there? I suppose. I suppose not. Okay. I think your argument before was it sort of a lesser included remedy. Yeah, correct. Yeah. Okay. Correct. So, um, so just, um, again, on the merits of this case, um, you know, a bad faith dismissal of bankruptcy is within the bankruptcy court's discretion. Um, and the finding of bad faith is reviewed only for clear error. Um, the bankruptcy court properly dismissed this case. Um, this is the third case in a series of cases that were largely identical to one another. Um, bad faith was based on the debtor's refusal to acknowledge a very serious and very significant mortgage debt with very significant arrears, um, rather than propose to repay that or address that mortgage in some way through a legitimate reorganization. Instead, the appellants, um, the appellant, um, argues that that was discharged by the tender of what I can only characterize as a fake instrument. Uh, and the appellant continues to make those arguments and the reply brief and an oral argument today. Um, but unless there are any additional questions for me, I'd like to reserve the rest of my time from Mr McDonald. I'm all set. Okay. Thank you. Thank you very much. May it please the court. Leonard McDonald, appearing on behalf of Appalachia Wells Fargo Bank and a and your honors. Mr Mummy has addressed your questions. It was his motion at the bankruptcy court level. Uh, as I indicated in my answering briefs, my, uh, concerns address the allegations of the invalidity of the deed of trust raised by the appellant. I'm prepared to answer any questions. I know you've read the briefs, my positions regarding the fact that she prevents any further inquiry, uh, into, into these matters. But, uh, with that I'll, I'll pause and give me that. Give me that citation again. What prevents any further inquiry? Your honor, it's ARS 33. Okay. Okay. That's the state law concerning. That's correct. Okay. Gotcha. And the legislature, uh, came to the conclusion that, uh, uh, there's, there's obviously a state interest in the finality of trustees sales. And unless Ms. Ramsell, uh, obtained a TRO 5 PM the day prior to the sale, uh, then if we go to sale, which we did, then she's prevented and she's waived any of those claims. Well, that's exactly what's happened here. Can I, I would note to the, I'm sorry. No, no, that's okay. I have a follow up question for you. Um, and I'm glad you raised the Arizona statutes cause that's exactly what I'm going to need your help on. Um, in California, if you're familiar with the In re Pearl case, what the ninth circuit has told us is their view of California law is that there's a point at which the debtor no longer has a cognizable protectable interest that the automatic stay would cover. And that happens when there's been a legal transfer of the property, but also when appropriate steps are taken to do everything a state court can do to basically evict the debtor from the property. And the fact that the debtor happens still to be there is not sufficient for protection. So I'm curious if Arizona basically has the same rule that there is such a thing as a possessory right, but at some port, at some point under Arizona law that loses, you know, it loses any value because the court, for example, has in California would be a writ of possession and everything one would need to do to actually accomplish the eviction except actually evict the person. So is there an analog to that in Arizona law? So you'd argue that, you know, the debtor really doesn't have an interest here anymore of any kind. I would, Your Honor. I'm not familiar with the California case. I was not aware until just a few moments ago. She's still living in the property. Okay. Again, this property sold third party. Yeah. March 21st. And so my file in that regard has been closed. Okay. So you don't know, for example, what they've done if there's something like what we'd call an unlawful detainer. Actually, you don't know if there's any such thing going on now. I just don't. Okay. I'm very familiar with the eviction laws and it's a possessory interest only. Okay. And there are no... Well, let me apologize for digressing that. Okay. Mr. McDonald, you're talking about Arizona law and whether termination of an interest or waiver of an interest would apply to the debtors or to Ms. Ramsdell and her husband. If there is any other party that had an interest in the property junior to your client's deed of trust, would those also be terminated or waived as a result of the foreclosure sale? They would, Your Honor, because all parties are given notice of the trustee sale. They fall under the umbrella of the statute. And let's say a junior lien holder in a hypothetical believes, well, wait, I'm in first position. You're showing me a second. I need to stop the sale. Well, they have to stop that sale by the of a temporary restraining order no later than 5 p.m. prior to the date of sale or they've waived their defense. It may not matter if it's an in rem or in personam situation here because there are no other in rem interests that remain in the property. And the only one that Judge Lafferty was talking about was the possible possessory interest of the Ramsdells. But there's no other interested party that would have an in rem right. That's correct, Judge. Okay. I think we're at the end of the allotted time. So unless somebody else has a question, we'll go back to Mrs. Ramsdell. Okay. First of all, I have to say that we did not discover that Wells Fargo had sold the trust until after my first bankruptcy. So Mr. Money is incorrect saying that all three bankruptcies are the same. We did not discover it until we received a letter from ComputerShare saying that they are the owner of the loan and the deed of trust. And also from later on from the servicer that it's not Wells Fargo who is the holder of due cause of the loan and the deed of trust. And in terms of interest, we still have equitable interest, a secure interest to the property. And the secure interest is listed in the schedules as well as the proof of claim 5-1. So the party who bought the property is given notice of a secure interest. So when they bought the property with all the liens and claims against it. So even though there is a foreclosure sale, we still have standing. You say you have standing as a result of a lien? Of the secure interest. Okay, the security interest. Is this one that was filed after the deed of trust that was originally granted to Bank of America Mortgage Securities? Well, the secure interest actually goes back to when we first purchased the property that we already have put in the security deposit. All those are prior to their lien. So we are... Who's the holder of the security interest? Me and my husband. Okay, but you granted yourselves a security interest in your own property? Yeah. And you granted... I can explain that. Okay, and you granted that security interest after you granted a security interest to the first mortgage holder, which Wells Fargo Bank and... No, we did not grant it to them at all. We still hold the secure interest. We are still prior to them because our lien started before we even had the mortgage. When we purchased... Did you own the property before you had the mortgage, or did you... Yes, correct. We owned the property before we had the mortgage. This was not a purchase money financing transaction? No, it's a refi. Actually, several times refi. So we owned the property way before Wells Fargo coming into picture or Bank of America coming into picture. So we are prior to them, definitely. So the owners of the property granted a security interest to themselves? Correct. Is that... There was litigation prior to the bankruptcy in the Arizona State Courts, and at least from what I've reviewed, it looks like the Arizona Trial Court and the Arizona Court of Appeal determined that whatever you claimed those interests to be, they were of no force and effect whatsoever. Is that correct? They have not ruled on any of those. Okay. Well, that's not the way I read it, and certainly not the way Judge Collins read it. So you better tell us why that was a mistake, if you're going to take that position. Well, first of all, that wasn't even brought into the picture about the security interest. It was never litigated in state court. Actually, the first time is that when I put into my first bankruptcy, and the first one was dismissed, but it was never ruled against. And it's still in there, and we have a proof of claim file on it. It's never ruled against by any judge in any of the bankruptcy court, not in my case, not in my husband's case, not in this case. So that was misinformation that somebody said. So, but the Arizona Appellate Court said, this is back in 2021, that Wells Fargo's lien on the property is superior to your interest, and affirmed the foreclosure of the Wells Fargo, then Wells Fargo mortgage. That's a state court ruling, right? That is very interesting, because at that time, I was still in my first bankruptcy, and I have no idea why the state court will have jurisdiction to even make that claim. And if you look at that, Wells Fargo filed to remove the notice that I filed into the county record is not removing the lien, it's only removing the notice, because- Well, I'm going to stop you, because the record indicates that the Arizona Court of Appeals ruled in November of 2021, and you filed your first bankruptcy in January 2022. And it went into appeal. Oh, you further appealed the Arizona Appellate Court's order? Well, okay, fine. Yeah, yeah, yeah. And basically, you know, we're still working on that one. It's not done. There's no ruling about the lien being superior to that. The only thing that is superior- The order that you're appealing has never been stayed, is that correct? That's a question against our- You have an appeal of the Arizona ruling, state court appeal, but that appeal of that state court original judgment or order, that original order from the trial court in Arizona, that's never been stayed, is that correct? It's never been stayed, meaning what? Did you ever ask for that, a motion to stay the effect of the trial court order in Arizona? I don't really understand the questions, because when I go to the appeal, the appeal didn't come in when I was in bankruptcy under automatic stay. Okay. So do I still have to ask for a stay when I'm in automatic stay? Well, if you have a bankruptcy case, no, but that's the problem, is that Judge Collins dismissed the case and barred you for a year. Okay, does anybody else have a question? Judge Farris, do you look quizzical? I do not. No? No, thank you. Judge Corbett? No. Okay, thank you very much for your good arguments. The matter is submitted, and we'll get you a written decision as soon as we can. Thank you very much. Thank you, Your Honor. Thank you. Okay, let's call our third matter, please.
judges: Lafferty, Faris, Corbit